**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| JEFFREY ALLEN ROWE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) 1:10-cv-362-JMS-DML |
| | ) |
| SUPT. BRETT MIZE, et al., | ) |
| | ) |
| Defendants. | ) |

**Entry Discussing Defendants' Motion for Summary Judgment**

In 2008, plaintiff Jeffrey Allen Rowe ("Rowe"), an inmate at the Pendleton Correctional Facility ("Pendleton"), accumulated drug debts to four prisoners—known as Heavy, Black, Junie, and Low Down—all members of the Gangster Disciples gang. These gang members threatened Rowe because Rowe could not pay his debt. On December 1, 2008, Rowe requested protective custody stating that he was being threatened by the four Gangster Disciple members. Rowe was approved for administrative segregation, but placed in a general population cell because there was not a cell available in administrative segregation. Rowe alleges that he informed the defendants that he continued to be threatened in general population. The defendants argue that they were not aware of any new threats to Rowe's safety after his placement in general population and that they responded reasonably to the risks they knew existed. On May 1, 2009, Rowe was attacked by offender McKnight (or "Shorty G"). Rowe alleges that he was attacked because he could not pay his drug debt and because he was considered a "snitch."

This civil rights action against officials at Pendleton followed. Rowe alleges that the defendants failed to protect him from the May 1, 2009, attack. Rowe alleges that defendants Superintendent Brett Mize, Administrative Assistant David Barr, Internal Affairs Officer Mike Rains,[1] Unit Team Manager Bruce Helming, Case Manager Thomas Richardson, Counselor Samantha Maddox, and Lt. Dianne Brooks failed to protect him through their classification and housing decisions. Rowe alleges that the defendants' actions (or inaction) caused his injuries. Rowe seeks money damages for this alleged Eighth Amendment violation. The defendants seek resolution of the claims alleged against them through summary judgment.

---

[1] The clerk is directed to correct the docket to reflect that the proper spelling of defendant Mike Rains' name is "Mike Rains."

For the reasons explained below, the motion for summary judgment [222] is **granted as to defendant David Barr and denied as to all other defendants.**

### Legal Standard

The motion for summary judgment in this civil rights action, as with any such motion, must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The substantive law identifies which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 127 S.Ct. 1769, 1776 (2007). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249--50; *Doe*, 42 F.3d at 443. If there is a genuine dispute as to any material fact then the motion for summary judgment must be denied.

### Substantive Law

The relevant substantive law is this: the Eighth Amendment's proscription against cruel and unusual punishment requires prison officials to protect inmates "from violence at the hand of other inmates." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008); *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Weiss v. Cooley,* 230 F.3d 1027, 1033 (7th Cir. 2000) (explaining that the failure to implement a proper classification system with the motive of allowing or helping prisoners to injure one another states a claim of deliberate indifference). As the Seventh Circuit has observed, however, "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson,* 538 F.3d 777 (internal quotation omitted). Therefore, a failure to protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, a prison official will be held liable for failing to protect an inmate only if deliberate indifference to a

2

prisoner's welfare "effectively condones the attack by allowing it to happen." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010).

To establish a failure-to-protect claim, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison official acted with "deliberate indifference" to the inmate's health or safety. *Farmer*, 511 U.S. at 833. A prison official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety"-that is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prisoner alleging an Eighth Amendment violation need not show that prison officials believed that harm would actually occur: "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. A prison official's knowledge of the risk "can be proven through circumstantial evidence, such as by showing that the risk was so obvious that the official must have known about it." *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004). Courts have found a substantial risk of serious harm when a prison official has knowledge of a threat to a specific prisoner from a specific source. *See Brown v. Budz*, 398 F.3d 904, 914-15 (7th Cir. 2005) (collecting cases). A prison official, however, may avoid liability if he "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Furthermore, the mere negligent failure to protect a prisoner from assault does not constitute a constitutional violation. *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

## Material Facts

Rowe does not dispute any of the facts listed in the defendants' Statement of Undisputed Material Facts.[2] He does however dispute the conclusions drawn from those facts and presents additional facts which he argues are also material. Rowe's additional disputed facts are considered in the discussion portion of this Entry.

**The following facts are not genuinely in dispute and shall be treated as established in this case consistent with Federal Rule of Civil Procedure 56(g).**

1. In December 2008, Rowe was confined at Pendleton, an Indiana State prison.

2. Brett Mize ("Superintendent Mize") was employed as the Superintendent at Pendleton.

---

[2] Rowe points out that Local Rule 56-1 requires the Movant to file a brief with a section labeled "Statement of Material Facts Not in Dispute." The defendants' brief included a "Statement of Undisputed Facts." This discrepancy is harmless and no relief is warranted. See Fed. R. Civ. P. 61.

3. Mike Rains ("Officer Rains") was employed as an Internal Affairs officer at Pendleton in December 2008.

4. Bruce Helming ("Officer Helming") was employed as Unit Team Manager for G Cell House at Pendleton in 2009.

5. David Barr ("Administrative Assistant Barr" or "Barr") was employed as an Administrative Assistant at Pendleton in 2009.

6. Samantha Maddox ("Counselor Maddox") was employed as a counselor at Pendleton.

7. Thomas Richardson ("Case Manager Richardson") was employed as a case manager at Pendleton.

8. Diane Brooks ("Lt. Brooks") was employed as a Lieutenant of G Cell House at the Pendleton Correctional Facility in 2009.

9. On December 1, 2008, Rowe requested protective custody claiming that he was concerned about an assault. Rowe lied on his request for protective custody because he did not want to admit that he was using drugs and had incurred a debt for those drugs.

10. On December 3, 2008, Rowe admitted to Officer Rains that he lied in his request for protective custody. Officer Rains told Rowe that he was going to recommend Administrative Segregation due to Rowe's lengthy sentence.

11. Between December 2, 2008, and January 20, 2009, Rowe was confined on a Protective Custody range at Pendleton.

12. On January 20, 2009, Rowe was moved to a general population range in G Cell House at Pendleton.

13. On or about January 21, 2009, a protective custody committee meeting was held regarding Rowe. The committee members included Counselor Maddox, Counselor M. Kidder, Case Manager Richardson, and Officer Helming.

14. The committee's determination would be forwarded to Superintendent Mize.

15. On January 27, 2009, Superintendent Mize approved Rowe's placement in Administrative Segregation.

4

16. Rowe was placed in general population while awaiting an open bed in Administrative Segregation.

17. In April 2009, Rowe provided correctional officers with letters to Superintendent Mize, Officer Helming, Case Manager Richardson, Officer Rains, Administrative Assistant Barr, Counselor Maddox, and Lt. Brooks, claiming Rowe was subject to threats by other offenders.

18. Superintendent Mize does not recall if he received any communication from Rowe regarding safety concerns.

19. Officer Helming does not recall receiving any communication from Rowe complaining about his safety.

20. Officer Rains does not recall any conversations with Officer Helming, Case Manager Richardson, or Counselor Maddox about Rowe's safety between December 1, 2008, and May 1, 2009.

21. Administrative Assistant Barr does not recall receiving any communication from Rowe regarding threats or safety concerns. If Administrative Assistant Barr had received communications from Rowe about safety concerns, the documents would have been forwarded to Unit Team staff or Internal Affairs. Administrative Assistant Barr could not locate a copy of communication from Rowe in the records he maintains.

22. Case Manager Richardson does not recall receiving any information regarding Rowe's safety concerns between January and May 2009.

23. Counselor Maddox does not recall any communications regarding Rowe's safety prior to May 2009. If Counselor Maddox had received a threat or safety concern, she would have forwarded the concerns to the Internal Affairs Department.

24. Rowe did not advise Lt. Brooks that he was being threatened during her walks through G Cell House, but did request other items from her.

25. On May 1, 2009, Rowe was assaulted by offender McKnight.

**Discussion**

As discussed above, to succeed on his failure to protect claim against any individual defendant,[3] Rowe must ultimately prove that he was attacked by another

---

[3] A prison official can only be held liable if he personally deprived the plaintiff of any federally secured right. *Burks v. Raemisch,* 555 F.3d 592, 593-94 (7th Cir. 2009) (ASection 1983 does not

5

inmate, that the defendant was deliberately indifferent to the substantial risk of such an attack and as a result of the defendant's conduct, Rowe was harmed. To be deliberately indifferent a defendant must know of a substantial risk of serious harm and consciously disregard this risk by failing to take reasonable measures to deal with it. If a defendant took reasonable measures to respond to a risk, then he was not deliberately indifferent, even if Rowe was ultimately harmed.

The defendants argue (1) they did not know that Rowe faced a substantial risk of serious harm after his placement in the general population and (2) there is no evidence that they failed to take reasonable measures to deal with the risk. Each argument is addressed below.

Rowe was afraid that he would be attacked in December 2008 when he requested protective custody status. In response, Rowe was approved for placement in Administrative Segregation. Rowe claims that while he was in general population waiting for an open cell in Administrative Segregation he informed defendants of continuing threats, but they failed to act and as a result he was attacked on May 1, 2009. The defendants argue that they were unaware of any new threats to Rowe's safety after his placement in general population and that there is no evidence that any defendant actually received any letters from Rowe regarding his safety concerns. The defendants argue that because they had no knowledge of a continuing risk of serious harm to Rowe they are entitled to summary judgment. In response, Rowe argues that there is ample evidence from which a jury could conclude that the defendants were aware that he faced a substantial risk of serious harm. Rowe sets forth that evidence in a statement of disputed facts with citations to admissible evidence consistent with the following:

1.      Between December 2, 2008, and January 20, 2009, Rowe was confined on a Protective Custody range at Pendleton. While Rowe was held on the protective custody range his classification status ADH pending P/C was documented on a board on the protective custody unit and visible to inmates in the general population.[4]

---

establish a system of vicarious responsibility. Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise. . . . *Monell's* rule [is that] that public employees are responsible for their own misdeeds but not for anyone else's.@)(citing *Monell v. New York City Dep't of Social Services,* 436 U.S. 658 (1978)). ABecause vicarious liability is inapplicable to . . .' 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.@ *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009).

[4] Rowe intends to testify to the fact that prisoners are targeted by other prisoners for assault, extortion, rape and death because they request protective custody or they "snitch" on prisoner misconduct. Because this testimony is not dispositive to the pending motion, the court will defer ruling on whether or not this testimony would be admissible at trial.

2. On January 20, 2009, Case Manager Richardson decided to move Rowe off the protective custody range to a general population range. That same day, Rowe was moved to a general population range in G Cell House at Pendleton.[5]

3. On or about January 21, 2009, a protective custody committee meeting was held regarding Rowe.[6] The committee members included Counselor Maddox, Counselor M. Kidder, Case Manager Richardson, and Officer Helming. The committee recommended placing Rowe on administrative segregation status. On or about January 27, 2009, Superintendent Mize approved Rowe's placement in Administrative Segregation. Rowe remained in general population while awaiting an open bed in administrative segregation.

4. Rowe's classification status (even when housed in general population) was administrative segregation. As a result he was prevented from leaving his cell without an officer escort and handcuffs. Accordingly, he relied on his range officers to place his mail in the mail bag (for regular mail) or into the counselor's box (for institutional mail). Rowe testified that he is not aware of any conflicts with any officers on his general population range, during the first half of 2009, which would have given them a motive to not turn in his mail. In addition, only Unit Team staff had the key to open up the counselor's box to collect the institutional mail.

5. Between January 30, 2009, through May 2009, Rowe received several threats from other prisoners including "June Bug," "Swany" and "Shorty-G" in an attempt to get Rowe to pay his drug debt to "Junie."

6. During the early morning hours of January 31, 2009, Rowe gave two written requests for protective custody addressed to Case Manager Richardson to correctional officers Jacox and White. Those officers informed Rowe that they slid the letters under Case Manager Richardson's door.

7. On January 31, 2009, Rowe told Sgt. D. Vance that he had received threats and asked for protective custody. Sgt. D. Vance recorded that conversation in the log book. Sgt. Vance restricted Rowe's range for a few days after Rowe's request.

8. On February 4, 2009, Rowe submitted a classification appeal that set out the facts concerning his debt situation, move from protective custody to a general population range, that he received threats, that he had requested protective custody again causing his range to go on restricted movement and that he needed protection. On February 6, 2009, Rowe submitted an addendum to the

---

[5] The record is not developed regarding why such a move was reasonable or why Rowe could not have stayed on the protective custody range until a cell was open on the administrative segregation unit.
[6] The record is not developed regarding why it was reasonable to move Rowe to general population prior to the protective custody meeting.

7

classification appeal that contained similar information and concerns. The classification appeal and the addendum were denied on February 16, 2009.

9. Between April 14, 2009, and April 25, 2009, Rowe sent, through his range officers during the night shifts two written communications to Superintendent Mize and one written communication to each of the following defendants: Administrative Assistant Barr, Officer Rains, Officer Helming, Case Manager Richardson, Counselor Maddox and Lt. Brooks. In those communications Rowe asked for protection. He stated that he was being threatened by June Bug, Swany, and Shorty-G, Gangster Disciple members trying to collect on his drug debt. Rowe did not receive a response to these communications.

10. Around the third week of April 2009, Rowe's father Orville R. Rowe called Pendleton and he spoke with Officer Helming three times telling him that Rowe was receiving threats and needed protection from the Gangster Disciples. Helming told Orville that he would speak to Rowe about the situation.

11. Lt. Brooks knew prior to May 1, 2009, (1) that plaintiff was housed on a protective custody range; and (2) that plaintiff was on G cell house for drug-related issues. Rowe asserts that Lt. Brooks also knew that Rowe had said he received threats from prisoners after he was moved to a general population range. The defendants point out that the evidence cited by Rowe does not directly support this statement. The evidence reflects that Lt. Brooks reviewed the log books for G cell house, but she could not attest to the regularity at which she reviewed the log books. Thus, the connection between reviewing the log books (in which Sgt. Vance reported Rowe was threatened) and knowing about any threats Rowe may have reported prior to May 1, 2009, is tenuous. Rowe admits that he did not speak to Lt. Brooks about any threats to his safety. Rowe explained that he did not tell Lt. Brooks verbally that he was receiving threats from other prisoners when she walked down his range because his neighbors would monitor his conversations with correctional staff and Rowe was afraid of the consequences of being labeled a snitch.

Given this evidence, a reasonable jury could accept Rowe's conclusion that the defendants were notified of or aware of a substantial risk that Rowe would be seriously injured by offender McKnight (or "Shorty G") or a member of the Gangster Disciples while housed in general population. For example, there is a material fact in dispute regarding (1) whether Counselor Maddox, Case Manager Richardson, Officer Helming and Superintendent Mize were aware of the risk of harm to Rowe in January 2009, as a result of the protective custody committee meeting in which administrative segregation was recommended and approved, even though Rowe was housed in general population; (2) whether Officer Helming was aware of the risks to Rowe through telephone calls with Rowe's father, (3) whether Lt. Brooks was aware of the risk from the log book and prior restrictions imposed on Rowe's general population unit; and (4) whether the correspondence sent to the defendants through

8

the institutional mail was received and reviewed.

The defendants point out that Rowe's claims are based on circumstantial evidence. But circumstantial evidence can be sufficient. As the Supreme Court explained:

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, cf. [J. Hall, General Principles of Criminal Law 118 (2d ed. 1960)] (cautioning against "confusing a mental state with the proof of its existence"), and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer*, 511 U.S. at 842. The fact that Rowe's testimony could be labeled as "self-serving" is irrelevant. The Seventh Circuit has rejected the conception that uncorroborated testimony from the non-movant cannot prevent summary judgment because it is self-serving. *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010), *quoted in Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 660 (7th Cir. 2010). A court's role in evaluating a summary judgment motion is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

Next, the defendants each assert that there is no evidence of additional steps that any individual defendant could have taken regarding Rowe's safety concerns assuming that he or she was aware of Rowe's concerns. In response, Rowe presented additional evidence that prison policy required each defendant to either personally investigate safety concerns that are presented to them or to report those concerns to another official to investigate. In addition, each of the defendants **with the exception of Administrative Assistant Barr** had the authority to investigate safety concerns and the authority or ability to either personally move Rowe to another cell location or to arrange to have another prison official move Rowe to another cell location. A reasonable jury could conclude that (with the exception of Administrative Assistant Barr) the individual defendants could have taken direct action to investigate the safety concerns and to directly move or arrange to move Rowe to another cell location. The record is not developed regarding why moving Rowe to another cell location would be unreasonable or, in other words, why keeping him on general population was reasonable. "Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833 (internal citations and quotations omitted).

The claim of liability alleged against Administrative Assistant Barr is so limited and tenuous that further analysis is necessary. The sole fact alleged against Barr is that Rowe addressed a letter to Barr about Rowe's safety concerns and that the letter was given to a correctional officer to place in the institutional mail system for delivery. It has been established that Barr has no recollection of receiving any correspondence from Rowe about safety concerns or threats and that Barr could not locate a copy of any letter from Rowe in the records that he maintains. Also undisputed is the fact that if Barr had received communications from Rowe about safety concerns, the documents would have been forwarded to Unit Team staff or Internal Affairs. In addition, unlike the other defendants, Barr had no authority to investigate Rowe's safety concerns or to move him to another area of the prison. There is no evidence, circumstantial or otherwise, from which a jury could conclude that Barr was deliberately indifferent to Rowe's safety or that Rowe was harmed as a result of Barr's actions or inactions. For these reasons, **defendant David Barr is entitled to judgment in his favor as a matter of law.**

## Conclusion

For the purposes of this motion, the evidence has been viewed in the light most favorable to Rowe, the non-movant. A reasonable jury who accepts Rowe's version of the facts could conclude that defendants Brett Mize, Mike Rains, Bruce Helming, Thomas Richardson, Samantha Maddox, and Dianne Brooks knew that Rowe faced a substantial risk of serious injury from members of the Gangster Disciples in general population, but that he failed to intervene such that he "effectively condone[d] the attack by allowing it to happen." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). None of these facts is established as a matter of law, and a trial is necessary to resolve these claims.

Summary judgment is granted in favor of David Barr because no reasonable jury could conclude that he was deliberately indifferent to the substantial risk of serious injury from members of the Gangster Disciples.

No partial final judgment shall issue at this time as to the claims resolved in this Entry.

**IT IS SO ORDERED.**

Date: 01/11/2013

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

JEFFREY ALLEN ROWE
116017
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064

All Electronically Registered Counsel